IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DAVID PILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>WESTAR ENERGY, INC., MOLLIE H. CARTER, JERRY B. FARLEY, MARK A. RUELLE, CHARLES Q. CHANDLER IV, R. A. EDWARDS III, SANDRA A.J. LAWRENCE, RICHARD L. HAWLEY, B. ANTHONY ISAAC, S. CARL SODERSTROM, JR., KING ENERGY, INC., GREAT PLAINS ENERGY INCORPORATED and MONARCH ENERGY HOLDINGS, INC.,<br><br>Defendants. | Civil Action No. 17-4086<br><br>COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934<br><br>JURY TRIAL DEMANDED |

Plaintiff David Pill ("Plaintiff"), by and through his attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE OF THE ACTION**

1. This action stems from two related proposed transactions announced on July 10, 2017, pursuant to which Westar Energy, Inc. ("Westar" or the "Company") and Great Plains Energy Incorporated ("Great Plains") will be combined in a "merger of equals" under a new holding company named Monarch Energy Holding, Inc. ("Monarch").

2. Specifically, pursuant to the July 9, 2017 amended and restated agreement and plan of merger (the "Merger Agreement") between Westar, Great Plains, Monarch, and certain related entities, in one proposed transaction, Great Plains will merge with and into Monarch, with Monarch to continue as the surviving corporation (the "Great Plains Merger"). In the other

proposed transaction, Westar will merge with and into King Energy, Inc. ("King"), a wholly-owned subsidiary of Monarch, with Westar to continue as the surviving corporation (the "Westar Merger," and, collectively with the Great Plains Merger, the "Proposed Transactions" or "Mergers").

3. Upon completion of the Mergers, Monarch will be the parent of both Great Plains and Westar, with the shareholders of Great Plains and Westar becoming the shareholders of Monarch. In exchange for each of their shares of Westar common stock, Westar shareholders will receive one share of Monarch common stock (the "Westar Merger Consideration"). In exchange for each of their shares of Great Plains common stock, Great Plains shareholders will receive 0.5981 shares of Monarch common stock (the "Great Plains Merger Consideration").

4. On September 14, 2017, Defendants filed a Registration Statement on Form S-4 with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transactions (the S-4, which is also referred to therein as a joint proxy statement/prospectus, is referred to herein in its entirety as the "S-4"). As described herein, the S-4 omits material information with respect to the Proposed Transactions, which renders it false and misleading, in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 140.14a-9 ("Rule 14a-9") promulgated thereunder.

5. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transactions or, in the event the Proposed Transactions are consummated, to recover damages resulting from the Defendants' wrongdoing described herein.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

7. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

9. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Westar common stock.

10. Defendant Westar is a Kansas corporation, with its principal executive offices located in Topeka, Kansas. Westar's common stock is listed on the New York Stock Exchange under the symbol "WR."

11. Defendant Charles Q. Chandler IV ("Chandler") is the Chairman of the Westar board of directors ("Board") and has served as a Board member since 1999.

12. Defendant Mark A. Ruelle ("Ruelle") has served as the Company's Chief Executive Officer ("CEO"), president, and as a Board member since 2011.

13. Defendant Mollie H. Carter ("Carter") has served as a Board member since 2003.

3

14. Defendant Sandra A.J. Lawrence ("Lawrence") has served as a Board member since 2004.

15. Defendant R. A. Edwards III ("Edwards") has served as a Board member since 2001.

16. Defendant Jerry B. Farley ("Farley") has served as a Board member since 2004.

17. Defendant Richard L. Hawley ("Hawley") has served as a Board member since 2011.

18. Defendant B. Anthony Isaac ("Isaac") has served as a Board member since 2003.

19. Defendant S. Carl Soderstrom, Jr. ("Soderstrom") has served as a Board member since 2010.

20. The defendants listed in ¶¶ 11-19 are collectively referred to herein as the "Individual Defendants."

21. Defendant Great Plains is a Missouri corporation headquartered in Kansas City, Missouri. Great Plains is a public utility holding company with wholly-owned direct and indirect subsidiaries that include Kansas City Power & Light Company, KCP&L Greater Missouri Operations Company, and GPE Transmission Holding Company, LLC. Great Plains' common stock is listed on the New York Stock Exchange under the symbol "GXP."

22. Defendant Monarch is a Missouri corporation and a direct wholly owned subsidiary of Great Plains, which was formed solely for the purpose of effectuating the Mergers and has no prior operations. Monarch will be renamed to a yet-to-be-determined name prior to or upon completion of the Mergers.

4

23. Defendant King is a Kansas corporation and a direct wholly owned subsidiary of Monarch, which was formed solely for the purpose of effectuating the Mergers and has no prior operations.

## SUBSTANTIVE ALLEGATIONS

24. Westar is the largest electric utility in Kansas, and provides electric generation, transmission and distribution services to approximately 700,000 customers in Kansas. Westar provides these services in central and northern Kansas, including the cities of Topeka, Lawrence, Manhattan, Salina and Hutchinson. Westar's wholly owned subsidiary, Kansas Gas and Electric Company, provides these services in south-central and southeastern Kansas, including the city of Wichita.

25. On May 31, 2016, Westar announced that it had entered into a proposed merger transaction with Great Plains, pursuant to which Great Plains would acquire all outstanding shares of Westar for $51.00 in cash and $9.00 in Great Plains common stock (the "original transaction").

26. On April 19, 2017, the Kansas Corporation Commission ("KCC") issued an order rejecting the original transaction and finding that it was not in the public interest because, among other things, the price Great Plains was paying to acquire Westar was excessive and paying it required Great Plains to take on too much debt.

27. After the KCC's rejection of the original transaction, Westar and Great Plains spent months negotiating an alternatively structured transaction that they believed the KCC would not reject. This resulted in the Proposed Transactions announced on July 10, 2017.

28. In soliciting shareholder approval for the Proposed Transactions, Defendants issued the S-4, which purports to contain a summary/overview of the Proposed Transactions, but omits certain critical information, which renders portions of the S-4 materially incomplete and/or misleading, in violation of the Securities Act provisions discussed herein. As a result, Westar's

stockholders lack material information necessary to allow them to make an informed decision concerning whether to vote in favor of the Merger.

29. In particular, the S-4 contains materially incomplete and/or misleading information concerning, *inter alia*: the financial analyses performed by Westar's financial advisor, Guggenheim Securities, LLC ("Guggenheim"), and by Great Plains' financial advisors, Goldman Sachs & Co. LLC ("Goldman") and Lazard Frères & Co. LLC ("Lazard") (collectively, the "financial advisors"), in support of their fairness opinions, including certain of the projections that the financial advisors relied upon in performing their financial analyses.

30. The S-4 states that, in performing their financial analyses and arriving at their fairness opinions, the financial advisors relied upon and reviewed certain internal financial information and forecasts/projections that were prepared and provided to them by the management of Westar and Great Plains. S-4 at pp. 85, 94, 107. This information was also provided to the companies' boards of directors in connection with their evaluation of the Mergers. S-4 at 120.

31. Although the S-4 discloses detailed projections for Westar and Great Plains, each on a standalone basis (pp. 120-123), it does not contain similar projections for Monarch, even though financial forecasts for Monarch were created and relied upon by the financial advisors in doing their analyses.[1] The S-4 also warns that Westar's and Great Plains' standalone financial projections are "not intended to be added together," and that doing so "would not represent the results the combined company will achieve if the merger is completed and does not represent

---

[1] According to the S-4, "[i]n addition to [preparing] standalone forward-looking financial information, each of Great Plains Energy and Westar Energy, along with its respective financial advisors, independently prepared pro forma combined forward-looking financial information, as if an amended merger agreement could be reached." S-4 at p. 123. Rather than disclosing these projections, however, the S-4 merely provides certain of the "assumptions considered in [the] development" of such projections, *id.*, which lacks sufficient detail in order for shareholders to make informed decisions.

forward-looking financial information for the combined company if the merger is completed." S-4 at p. 120.

32. Financial projections are considered by courts to be among the most important information a stockholder can have when evaluating the proposed consideration in a merger and deciding whether to vote in favor of a merger. Here, the Monarch projections would be highly material to Westar's shareholders because they are being asked to vote for a transaction in which they will receive Monarch shares, and the S-4 specifically warned such shareholders not to add together Westar's and Great Plains' projections.

33. This nondisclosure of projections renders the S-4's discussion of Guggenheim's Discounted Cash Flow Analysis (DCF) of Monarch (S-4 at p. 117) materially deficient, in that although it states that Guggenheim "performed illustrative stand-alone discounted cash flow analyses of Monarch Energy based on forecasted after-tax unlevered free cash flows for Monarch Energy….," the S-4 fails to disclose such forecasted after-tax unlevered free cash flows.

34. The S-4 also states that Guggenheim's DCF of Monarch incorporated "expected synergies expected to result from the transaction and the estimated costs to achieve such synergies," S-4 at pp. 107, 117 (defined as the "synergy estimates"), but the S-4 does not disclose such synergy estimates. Again, since Westar's shareholders are being asked to exchange their shares for Monarch shares, this information would be highly material.

35. Similarly, the S-4 states that, "[i]n connection with rendering [its fairness opinion] and performing its related financial analyses, Goldman Sachs reviewed, among other things: . . . certain financial analyses and forecasts for Monarch Energy prepared by the management of Great Plains Energy." As discussed above, the S-4 fails to disclose these forecasts. This renders the S-4's discussion of Goldman's Illustrated Discounted Cash Flow Analysis—Monarch Energy (S-4

7

at p. 89) materially deficient, in that although it states that Goldman: (a) performed such analysis "using the [financial] Forecasts for Monarch Energy"; (b) "calculated estimated unlevered, after-tax free cash flows of Monarch Energy for the calendar years 2017 through 2022 using information contained in the Forecasts for Monarch Energy . . . ."; and "calculated illustrative terminal value indications" for Monarch using 2022 EBIDTA forecasts (S-4 at 89), the S-4 fails to disclose such projected financial information.

36. The S-4 also states that Goldman's Illustrative Present Value of Future Shares Price Analysis (S-4 at p. 90) was based, in part, on Monarch's estimated earnings per share and dividends per share—neither of which were disclosed—which were then discounted to present values using an estimate of Monarch's cost of equity—which is also not disclosed (S-4 at 90).

37. Given that the financial advisors relied upon the Monarch projections and financial estimates in conducting their financial analyses and rendering their fairness opinions, and that Westar's shareholders are being asked to vote for exchanging their Westar shares for Monarch shares, failure to include such projections in the S-4 constitutes a material omission and renders the financial analyses materially misleading.

38. The S-4 also fails to disclose various financial information and multiples underlying the financial advisors' financial analyses. For example, with respect to Goldman's Selected Companies Analysis (S-4 at p. 87), the S-4 states that Goldman "reviewed and compared *certain* financial information for Great Plains Energy and Westar Energy to corresponding financial information, ratios and public market multiples for [certain selected] publicly traded corporations in the utility industry." S-4 at p. 87 (emphasis added). However, the S-4 fails to disclose *any* of the specific types of financial information or financial metrics that Goldman calculated and

compared in its analysis. The S-4 also fails to disclose any of the results of such analysis, such as the observed ranges of ratios and multiples.

39. By comparison, the S-4's discussion of Lazard's Selected Comparable Companies Analysis of Great Plains (S-4 at 96-97), and that of Westar (S-4 at 97-98), does disclose the types of financial information that Lazard calculated and compared, including each company's P/E Multiple and EBITDA multiple.

40. However, this does not mean that the discussion of Lazard's analysis is materially complete—it is not. The S-4 fails to disclose the individual multiples that Lazard observed for each selected company, or the low, mean, median and high trading multiples that Lazard observed for the group of selected companies (it instead merely discloses ranges that Lazard "applied," rather than observed). Courts have found that the disclosure of such multiples is "critical" to providing shareholders with a "fair summary" of the financial advisor's analysis.

41. With respect to Guggenheim's Selected Publicly Traded Companies Analysis of Monarch Energy (S-4 at p. 117), the S-4 states that Guggenheim based its analysis on the fiscal year earnings per share of Westar and Great Plains Energy, but it is unclear if those figures included any impact of combining the two companies.

42. The S-4 also fails to disclose whether the financial advisors incorporated the companies' net operating loss carryforwards ("NOLs") into their DCF analyses. Westar's NOLs as of December 31, 2016 totaled $227.5 million. Great Plains' NOLs as of December 31, 2016 totaled $718 million.

43. The foregoing information is material to Westar shareholders in deciding how to vote their shares, as the real informative value of the financial advisor's work is not in its conclusion, but in the valuation analyses that buttresses that result. When a financial advisor's

endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion, as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

44.    Without these material disclosures, it is impossible for Westar's shareholders to fully understand and interpret these financial analyses, including their impact on the fairness of the Westar Merger Consideration, when determining whether to vote in favor of the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

45.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public stockholders of Westar (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any of the Defendants.

46.    This action is properly maintainable as a class action for the following reasons:

   a.    The Class is so numerous that joinder of all members is impracticable. As of July 6, 2017, there were 142,093,387 shares of Westar common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

   b.    Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) and 20(a) of the Exchange Act in connection with the Proposed Transaction; and (ii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the S-4 as currently composed.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.  A class action is superior to other available methods for fairly and efficiently adjudicating this controversy;

g.  Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## CAUSES OF ACTION

### COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder
(Against All Defendants)**

47.  Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.  Section 14(a)(1) of the Exchange Act makes it "unlawful for any person . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title."

11

15 U.S.C. § 78n(a)(1).

49. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that solicitation communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9(a).

50. Rule 14a-9 further provides that, "[t]he fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made." 17 C.F.R. § 240.14a-9(b).

51. As discussed herein, the S-4 misrepresents and/or omits material facts concerning, *inter alia*: the financial analyses performed by Westar's and Great Plains' financial advisors in support of their so-called "fairness opinions," including certain of the projections that the financial advisors relied upon in performing their financial analyses.

52. Defendants prepared, reviewed, filed and disseminated the false and misleading S-4 to Westars's shareholders. In doing so, Defendants knew or recklessly disregarded that the S-4 failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. The omissions and incomplete and misleading statements in the S-4 are material in that a reasonable shareholder would consider them important in deciding how to vote their shares.

In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

54. By virtue of their positions within the Company and/or roles in the process and in the preparation of the S-4, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Merger negotiation and sales process and reviewing the financial advisors' complete financial analyses purportedly summarized in the S-4.

55. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Merger.

56. Westar is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the S-4.

57. Great Plains, via its officers and/or directors, also prepared and/or reviewed the S-4, which Great Plains issued jointly with Westar and which Great Plains used to solicit votes in favor of the Proposed Transactions. Great Plains also provided its management projections for use by the companies' financial advisors in connection with their Merger analyses.

58. Monarch (and King) also jointly issued the materially misleading S-4 in connection with the issuance of shares serving as the Westar Merger Consideration and the Great Plains Merger Consideration.

59. As the S-4 states: "This document is serving as both a joint proxy statement of Great Plains Energy and Westar Energy and a prospectus of Monarch Energy. It is a joint proxy statement because it is being used by each of the boards of directors of Great Plains Energy and Westar Energy . . . to solicit proxies from their respective shareholders. It is a prospectus because Monarch Energy is offering shares of its common stock to Great Plains Energy's and Westar

Energy's shareholders in exchange for shares of Great Plains Energy and Westar Energy common stock if the mergers are completed." S-4 at pp. 1-2.

60. Defendants knew that Plaintiff and the other members of the Class would rely upon the S-4 in determining whether to vote in favor of the Merger.

61. As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(a) of the Exchange Act and Rule 14d-9, absent injunctive relief from the Court, Plaintiff and the other members of the Class will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to vote in favor of the Merger.

62. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

### Claim for Violations of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

63. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64. The Individual Defendants acted as controlling persons of Westar within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Westar, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the S-4 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

65. Each of the Individual Defendants were provided with or had unlimited access to copies of the S-4 and other statements alleged by Plaintiff to be misleading prior to and/or shortly

after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The S-4 contains the unanimous recommendation of each of the Individual Defendants to approve the Westar Merger. They were thus directly connected with and involved in the making of the S-4.

67. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

68. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

69. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class representative and Plaintiff's counsel as Class counsel;

B. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transactions;

C.  Directing the Individual Defendants to disseminate an S-4 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  In the event Defendants consummate the Proposed Transactions, rescinding it and setting it aside or awarding rescissory damages to Plaintiff and the Class;

E.  Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

F.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

G.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Plaintiff designates Topeka, Kansas as the place of trial.

Dated: September 21, 2017  **JOSEPH, HOLLANDER & CRAFT LLC**

By: /s/ Michelle Moe Witte
Michelle Moe Witte, #22620
500 North Market
Wichita, KS 67214
Tel: (316) 262-9393
Fax: (316) 262-9006
Email: mmoe@josephhollander.com

Christopher M. Joseph #19778
1508 SW Topeka Blvd.
Topeka, KS 66612
Tel.: (785) 234-3272
Fax: (785) 234-3610
Email: cjoseph@josephhollander.com

*Attorneys for Plaintiff*

## PLAINTIFF CERTIFICATION
## UNDER THE FEDERAL SECURITIES LAWS

I, David Pill, hereby state:

1. I have reviewed the complaint against Westar Energy, Inc. ("Westar"), certain of its directors and officers, Great Plains Energy Inc., and Monarch Energy Holding, Inc. I have authorized the filing of the complaint and a lead plaintiff motion on my behalf.

2. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary.

3. I currently own 327 Westar shares. I inherited 100 of those shares on April 23, 2015 at $38.33 per share and 227 of those shares on April 11, 2016 at $50.61 per share.

4. I did not purchase these securities at the direction of counsel, or in order to participate in any private action arising under the federal securities laws.

5. During the three-year period preceding the date of signing this certification, I have not sought to serve, and have not served, as a representative on behalf of a class in any private action arising under the federal securities laws.

6. I will not accept any payment for serving as a representative party on behalf of the Class except to receive a pro rata share of any recovery, or as ordered or approved by the Court, including the award to a representative party of reasonable costs and expenses, including lost wages relating to the representation of the Class.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 20 day of September, 2017

By: _____
David Pill